JOHN H. MacCONAGHY [083684]
JEAN BARNIER [231683]
MacCONAGHY & BARNIER, PLC
645 First St. West
Sonoma, CA 95476
Telephone:   (707) 935-3205
Facsimile:   (707) 935-7051
Email:       macclaw@macbarlaw.com

Attorneys for Plaintiff, Andrea A. Wirum
Liquidating Trustee in Bankruptcy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>360 VIANSA, LLC,<br><br>　　　　　Debtor.<br><br>ANDREA A. WIRUM, Liquidating Trustee of the Estate of 360 Viansa, LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, etc.;<br><br>　　　　　Defendants. | Case No. 09 – 05492 VRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO STAY TRIAL**<br><br>Date: 12/4/2009<br>Time: 1:30 PM<br>Courtroom 9<br>[Hon. William H. Alsup] |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION...................................................................................................................1

ESSENTIAL FACTUAL AND PROCEDURAL BACKGROUND......................................2

ARGUMENT ..........................................................................................................................6

1. THE DISPOSITIVE ISSUE ON THIS MOTION IS WHETHER NATIONAL UNION IS ENTITLED TO A JURY TRIAL ........................................6

2. THIS ADVERSARY PROCEEDING IS AN EQUITABLE ACTION FOR WHICH THERE IS NO RIGHT TO A JURY TRIAL ..................................7

    A.  THE RULE OF *LANGENKAMP V. CULP* .......................................................7

    B.  THE SECOND CIRCUIT'S DECISION IN *GERMAIN V. CONNECTICUT NATIONAL BANK* DOES NOT COMPEL A CONTRARY RESULT ......................................................................................9

    C.  THIS IS STILL AN ACTION IN EQUITY EVEN THOUGH PLAINTIFF HOLDS HER "BAD FAITH" CAUSE OF ACTION AS AN ASSIGNEE ................................................................................................12

    D.  NATIONAL UNION'S TWO PROOFS OF CLAIM ARE LOGICALLY RELATED TO THE BAD FAITH COMPLAINT SINCE THEY ENCOMPASS ALLEGED RIGHTS UNDER THE SAME INSURANCE CONTRACT OVER THE SAME PERIOD OF TIME ................................................................................................................13

3. THIS ADVERSARY PROCEEDING IS A "CORE" PROCEEDING ......................13

4. THE DECEMBER 7 TRIAL SHOULD NOT BE STAYED ....................................14

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Hillman* 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 792 (1935)..........7

*Brown v. American International Insurance Group, Inc et al* 339 F.Supp.2d 336 (D.Mass. 2004) ..........5

*Eureka Federal Savings & Loan Assoc. v. American Cas. Co. of Reading, Pennsylvania*, 873 F.3d 229 (9th Cir. 1989)..........5

*Financial Management Advisors, LLC et al v. American International Specialty Lines Insurance Company* 506 F.3d 922 (9th Cir. 2007)..........5

*Gardner v. New Jersey* 329 U.S. 656, 67 S.Ct. 467, 91 L.Ed 504 (1947)..........8

*Germain v. Connecticut National Bank* 988 F.2d 1323 (2d Cir. 1993)..........9,11,13

*Granfinanciera, S.A. v. Nordberg* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)..........8

*In re CBI Holding Company, Inc.* 529 F.3d 432 (2d Cir. 2008)..........12, 13,14

*In re Crown Vantage, Inc.* 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. 2002) ..........2,9,10, 11

*In re Lazar* 237 F.3d 967 (9th Cir. 2001)..........10

*In re Pinkstaff* 974 F.2d 113 (9th Cir. 1992)..........10

*In re Price* 42 F.3d 1068 (7th Cir. 1994) ..........10

*Katchen v. Landy* 382 U.S. 323, 329, 86 S.Ct. 467 (1966)..........7,8

*Langenkamp v. Culp* 498 U.S. 42, 111 S.Ct. 330 (1990)..........1,2,7,8,11

*National Steel Corporation v. Golden Eagle Insurance Company* 121 F.3d 496 (9th Cir. 1997) ..........5

*Pepper v. Litton* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed 281 (1939)..........7

1  *Stauth v. National Union Insurance Company of Pittsburgh, PA* 1999 U.S.
2  App. LEXIS 14006, 185 F.3d 875 (10th Cir. 1999) ...........................................5

3

4                              **STATE CASES**

5  *Clemmer v. Harford Insurance Company* 22 Cal.3d 865, 151 Cal.Rptr. 285
6  (1978) ...........................................................................................................5

7  *England v. Christensen* 243 Cal.App.2d 413, 52 Cal.Rptr. 402 (1966) ..............4

8  *Lehman v. Superior Court* 145 Cal.App.4th 109 (2006). .....................................4

9  *Samson v. Transamerica Insurance Company* 30 Cal.3d 220, 178
10 Cal.Rptr.343 (1981) ........................................................................................5

11

12                    **FEDERAL STATUTES AND RULES**
13
14 United States Code
      Title 28
15        Section 157.................................................................................8, 9,10,13
          Section 1334..........................................................................................9
16

17 Federal Rules of Bankruptcy Procedure
      Rule 5011 .............................................................................................14
18
   Local Bankruptcy Rules for the Northern District of California
19    Rule 9015 ............................................................................................6,7

20
                                **STATE STATUTES**
21

22 California Corporations Code
      Section 17254..........................................................................................4
23    Section 17255..........................................................................................4

24
   Nevada Revised Codes
25    Section 86.343.........................................................................................4

26

MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First St. West
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email:    macclaw@macbarlaw.com


Attorneys for Plaintiff
ANDREA A. WIRUM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>360 VIANSA, LLC,<br><br>        Debtor.<br>_____<br>ANDREA A. WIRUM, LIQUIDATING TRUSTEE OF THE ESTATE OF 360 VIANSA, LLC<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, etc.<br><br>        Defendants.<br>_____ | No. C 09-05492 VRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TO STAY TRIAL**<br><br>Date: 12/4/09<br>Time: 1:30 p.m.<br>Courtroom 9<br>[Hon. William H. Alsup] |

## INTRODUCTION

This "Motion to Withdraw Reference and to Stay Trial" is dilatory forum-shopping. Defendant National Union was quite content to litigate this case in the Bankruptcy Court for 18 months until the eve of trial, when it received two adverse rulings on the parties' cross-motions for summary judgment. Suddenly it asserted an emergency, and now belatedly seeks a jury trial in District Court. As will be shown below, under the rule of *Langenkamp v. Culp* 498 U.S. 42,

1  111 S.Ct. 330, 112 L.Ed 2d 343 (1990) as applied by this Court in *In re Crown Vantage, Inc.*
2  2002 U.S. Dist. LEXIS 26109 (N.D. Cal. 2002) the Bankruptcy Court is the proper forum to try
3  this case and render final judgment. The Motion should be denied.

## ESSENTIAL FACTUAL AND PROCEDURAL BACKGROUND

5  This action arises out of the financial destruction of the Viansa Winery, a producer of premium Italian grape varietal wines located at the southern edge of the Sonoma Valley. Viansa was founded and operated for decades by members of the Sebastiani family, pioneers of the California table wine business.

In June of 2005, Viansa was bought by 360 Global Wine Company ("Global") for approximately $30,000,000 in a highly leveraged transaction funded by a Cayman Islands hedge fund. Global was the brainchild of one Joel A. Shapiro, a former penny-stock trader with no experience in the wine business. After closing, Global owned and operated Viansa through its wholly owned subsidiary, 360 Viansa, LLC.[1]

In early March, 2006, Global attempted to make another acquisition, this time of a defunct tungsten mine known as the Springer Mining Company held as surplus corporate property by General Electric Company. The purchase price was $3,000,000, all due on March 31, 2006. Global had no funds whatsoever in March of 2006, but 360 Viansa, LLC had $600,000. In a speculative frenzy, the day before the Springer Mining Co. transaction was scheduled to close, Global convinced GE to modify the agreement to provide that the purchase price would be payable with a $600,000 down payment and a $2,400,000 promissory note due in just three weeks, secured by all of the stock in Springer Mining Co. Global took Viansa's cash to make the $600,000 down payment. Needless to say, Global quickly defaulted on the $2,400,000

---

[1] The background facts set forth in this Memorandum can be verified by the 14 exhibits to the "Declaration of John H. MacConaghy in Support of Plaintiff's Motion for Summary Judgment or Summary Adjudication of Issues" filed with the Bankruptcy Court on September 17, 2009 as Docket No. 65, and "Plaintiff's Expert Witness Disclosure" filed on September 8, 2009 as Docket No. 62.

note and both the stock and Viansa's cash were promptly lost.

With the loss of $600,000 in critical cash reserves, Viansa experienced a severe liquidity crisis and was unable to pay its inventory production, storage, and shipping expenses, resulting in that wine inventory being frozen by statutory and contractual liens. This cascaded into much greater losses, and on March 7, 2007, 360 Viansa, LLC filed Chapter 11. One of its creditors in the Chapter 11 case was Defendant National Union, which had issued an "Executive and Organization Liability Insurance Policy" to Global and its officers and directors ("the D&O Policy"). On July 13, 2007, National Union filed a Proof of Claim in an unliquidated amount "...for premiums, deductibles, and other related fees, expenses and obligations for...insurance coverages and services..." owing as of March 7, 2007, including "indemnity and contribution" claims, see Plaintiff's Request to Take Judicial Notice, Ex. 1. On January 29, 2008 it filed a further Request for Payment of Administrative Expense Claim for the same obligations "...arising after the Petition Date..." *id* Exhibit 2.

On December 21, 2007, Viansa confirmed a Chapter 11 Plan of Reorganization which effectively surrendered all of its tangible assets to its primary secured creditor, and resulted in the appointment of Plaintiff Andrea Wirum as liquidating trustee to pursue any appropriate litigation claims for the benefit of its $9,000,000 +/- in unpaid unsecured creditor claims.

On February 8, 2008, Ms. Wirum filed her "Complaint for Damages for Breach of Fiduciary Duty, Recovery of Fraudulent Transfers, Negligence, Unlawful Distributions by a Limited Liability Company, and For and Accounting" against Joel A. Shapiro, Michael L. Jeub, and Anthony J.A. Bryan (the "Insured-defendant-directors"), the three members of the board of directors of Global., National Union Request to Take Judicial Notice, Ex. 2. The principal charging allegation of the Complaint was the Insured-defendant-directors had orchestrated an illegal dividend by Viansa for the benefit of its parent Global by squandering Viansa's cash for

the Springer Mining Co. transaction.[2]

The Insured-defendant-directors were all covered by the D&O policy issued by Defendant National Union which had net policy limits of $1,900,000. They timely tendered the claim, and the firm of Latham & Watkins, LLP was engaged to represent them from National Union's list of approved defense counsel. On April 5, 2008, Plaintiff submitted a detailed "policy limits" settlement demand, asserting that likely damages at trial would be well in excess of $7,000,000. The settlement demand was ignored. On May 14, 2008, National Union abandoned the Insured-defendant-directors and formally denied coverage under the D&O policy based on its "prior acts exclusion", and Latham & Watkins withdrew as defense counsel.

Over the next two months Plaintiff settled her claims directly with the Insured-defendant-directors. Default judgments in the amount of $10, 362, 595 were entered against them . They assigned their "bad faith" claims against National Union and other rights under the D&O policy to Plaintiff in consideration for a covenant-not-to-execute those judgments.

On July 14, 2008, Plaintiff filed a "Supplemental Complaint for Damages for Breach of Insurance Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing" against National Union as assignee of the policy rights of the Insured-defendant-directors, NU Req. Jud. Not., Ex. 4. On June 22, 2009, at a duly noticed scheduling conference, the case was set for a bench trial before the Bankruptcy Court on December 7, 2009, *id* Ex. 6.

---

[2] It is a fundamental principle of corporate insolvency law that the directors of a corporation, or managers of a limited liability company, who authorize the payment of a distribution of company assets for the benefit of equity holders are personally liable for the damages to the corporation or limited liability company in question if the entity is thereby rendered insolvent or unable to pay its debts as they become due, see California Corporations Code Sections 17254 [an LLC cannot make a distribution for the benefit of its members if it is insolvent] and 17255 [a member of manager who approves such a distribution is personally liable to the LLC]; *Lehman v. Superior Court* 145 Cal.App.4th 109 (2006) [application of rule in corporate context]; *England v. Christensen* 243 Cal.App.2d 413, 52 Cal.Rptr. 402 (1966) [same]. There was an academic conflicts of law question as to whether California or Nevada substantive law applies to the instant case, but the two states are substantially the same on this point, see Nev. Revised Code Section 86.343.

On October 16, 2009, the Bankruptcy Court heard extensively briefed cross-motions for summary judgment filed by both sides. Defendant National Union vociferously argued that the default judgments entered against the Insured-defendant-directors were "collusive", that Plaintiff lacked standing, and that any coverage for the claim was barred by the "prior acts exclusion" in the policy. Plaintiff argued that National Union was barred from re-litigating the merits of the $10,362,595 default judgments, since those had been entered only after it had abandoned the Insured-defendant-directors and rejected the "policy limits" settlement demand. Plaintiff further contended that there was coverage, and that National Union's flawed interpretation of its own "prior acts exclusion" had already been rejected in at least two federal court decisions – *Brown v. American International Group, Inc, et al* 339 F. Supp.2d 336 (D. Mass 2004) and *Stauth v. National Union Insurance Company of Pittsburgh* 1999 U.S. App. LEXIS 14006, 185 F.3d 875 (10th cir. 1999)[3] – which it brazenly and arrogantly disregarded in denying coverage to the Insured-defendant-directors in the instant case.

On October 29 and November 2, respectively, the Bankruptcy Court entered two separate memoranda on the cross-motions for summary judgment. The first held that National Union was indeed bound by the $10,362,595 judgments if there was coverage, NU Req.Jud.Not., Ex.7 [4]. The second denied National Union's motion for summary judgment and held that the Court was "very close" to concluding that there was coverage, but reserved the issue for trial on December 7, *id* Ex. 8.

Only then, on November 4, did National Union file a Demand for Jury Trial, NU

---

[3] These holdings are consistent with the Ninth Circuit cases of *Eureka Federal Savings & Loan Assoc. v. American Cas. Co. Of Reading, Pennsylvania*, 873 F.2d 229, 234-235 (9th Cir. 1989) and *Financial Management Advisors, LLC, et al v. American International Specialty Lines Insurance Company*, 506 F.3d 922 (9th Cir. 2007).

[4] This ruling was required by *National Steel Corporation v. Golden Eagle Insurance Company* 121 F.3d 496 (9th Cir. 1997); *Clemmer v. Hartford Insurance Company* 22 Cal.3d 865, 884, 151 Cal.Rptr. 285 (1978); and *Samson v. Transamerica Insurance Company* 30 Cal.3d 220, 238, 178 Cal.Rptr. 343 (1981).

Req.Jud.Not., Ex. 10, and a "Motion Pursuant to Local Rule 9015-2 For Court To Determine That Defendant National Union's Jury Demand Was Timely Made And That National Union Has A Right To A Jury Trial."  On November 6, Plaintiff filed a counter "Motion to Strike Jury Demand."  Both motions were set for hearing before the Bankruptcy Court on December 4.  Not content to allow those cross-motions to be heard in an orderly fashion, on November 16, National Union filed this Motion to Withdraw Reference and Stay Trial.

## ARGUMENT

### 1. THE DISPOSITIVE ISSUE ON THIS MOTION IS WHETHER DEFENDANT NATIONAL UNION IS ENTITLED TO A JURY TRIAL

Plaintiff and National Union agree on the basic principles governing the Bankruptcy Court's jurisdiction over this adversary proceeding.  Pursuant to 28 U.S.C. Section 1334 the District Court is initially vested with subject matter jurisdiction over bankruptcy cases and adversary proceedings "arising in" or "related to" bankruptcy cases.  Pursuant to 28 U.S.C. Section 157(a) it may, and has in the Northern District of California, "refer" these matters to the bankruptcy judges of the District.  Bankruptcy judges are empowered to render final judgments in "core" proceedings defined by 28 U.S.C. Section 157(b) and findings and recommendations in "non-core" proceedings, Section 157(c).  Pursuant to Section 157(d) the District Court *may* "withdraw the reference" of *any* proceeding before the bankruptcy court.  It *must* withdraw the reference, "....if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

National Union admits that this action does not involve a federal question independent of the Bankruptcy Code, see National Union Ps & As, p. 1:13-14.  The question at hand is whether it has a right to a jury trial, *id* pp. 6-7.  If it does, Plaintiff agrees that the case must be withdrawn to the District Court, since the bankruptcy judges of this District are not empowered to hear jury

trials, see 28 U.S.C. Section 157(e) and Local Bankruptcy Rule 9015-2(b). But we will show below that National Union has no jury trial right here. Using the same analysis, we will also show that this is a "core" proceeding, so there is no reason to withdraw reference on a discretionary basis.

### 2. THIS ADVERSARY PROCEEDING IS AN EQUITABLE ACTION FOR WHICH THERE IS NO RIGHT TO A JURY TRIAL

#### A. The Rule of *Langenkamp v. Culp*

There is a well established line of Supreme Court authority defining the critical significance of the filing of a proof of claim in a bankruptcy or other equitable *in rem* proceeding. The rule is clear – the filing of a proof of claim constitutes a consent to the equitable jurisdiction of the bankruptcy court and a waiver of the right to a jury trial. The rationale is stated in *Alexander v. Hillman* 296 US 222, 241 - 242, 56 S.Ct. 204, 210-211, 80 L.Ed 792 (1935):

> By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance...Respondents contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated. In behalf of creditors and stockholders, the receivers reasonably may insist that before taking aught, respondents may by the receivership court be required to make restitution. **That requirement is in harmony with the rule generally followed by courts of equity that having jurisdiction over the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief** [citations]. Distribution may not be made without decision upon the counterclaims. Nothing is more clearly a part of the subject matter of the main suit than recovery of all that to the res belongs. [citations]. (Emphasis added)

Thus, over the past 80 years, the Supreme Court has consistently held that the filing of a proof of claim subjects the claimant to the summary *equitable* jurisdiction of the Bankruptcy Court, *Pepper v. Litton* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed 281 (1939) [filing proof of claim consented to counterclaim against corporate officer for breach of fiduciary duty]; *Katchen v*

*Landy* 382 U.S. 323, 86 S.Ct. 475 (1966)[filing proof of claim consented to summary jurisdiction in Act case]; *Gardner v. New Jersey* 329 U.S. 565, 67 S. Ct. 467, 91 L.Ed 504 (1947), [filing proof of claim by State waived 11th Amendment sovereign immunity as against suit to avoid tax lien by reorganization trustee].

The most recent and most clearly applicable decision, which conclusively resolves this issue in favor of the Plaintiff Wirum is *Langenkamp v. Culp* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed 2d 343 (1990), a case given very short shrift by Defendant National Union's Motion to Withdraw Reference. Clarifying *Granfinanciera, S.A. v. Nordberg* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed 2d 26 (1989), the Supreme Court held that a party which files a proof of claim in a bankruptcy case waives any 7th Amendment right to jury trial on an adversary proceeding brought by the Trustee, stating at 111 S.Ct. 330:

> Petitioner contends that the Tenth Circuit erred in holding that those creditors of the debtors who had filed claims against the bankruptcy estate were entitled to a jury trial. We agree. In *Granfinanciera* we recognized that by filing a proof of claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims", thereby subjecting himself to the bankruptcy court's equitable power. [citation omitted]. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. *Granfinanciera, supra,* 492 U.S., at 57-58, 109 S.Ct. at 2798-2799.

See also 28 U.S.C. Section 157(b)(2)(C) ["counterclaims by the estate against persons filing claims against the estate" listed as "core proceeding"].

Since Defendant National Union filed proofs of claim in Viansa's Chapter 11 cases, it has voluntarily submitted to the bankruptcy court's *equity jurisdiction*, and has waived any right to a jury trial. More precisely, it never had any right to a jury trial in the first place, since its election to participate in the distribution of the corpus of the bankruptcy estate makes this subsequent adversary proceeding an an action "in equity", not "in law."

        B.      **The Second Circuit's Decision in *Germain v. Connecticut National Bank* Does Compel a Contrary Result**

Defendant National Union contends that it is entitled to a jury trial under the Second Circuit's split decision in *Germain v. Connecticut National Bank* 988 F.2d 1323 (2d Cir. 1993), which was followed by this Court in *In re Crown Vantage, Inc.* 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. 2002). The issue in *Germain* was whether a bankruptcy trustee had waived his right to a jury trial of a lender liability case because he was the successor to the debtor and the debtor had voluntarily invoking the equitable jurisdiction of the bankruptcy court by filing the underlying bankruptcy petition. The Second Circuit held that he had not. Although the creditor-defendant's right to a jury trial was not at issue, the majority opinion held in *dictum* that a creditor's filing of a proof of claim does not "automatically" waive the right to a jury trial, stating at 988 F.2d p. 1330, "[I]t is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor....We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process." There are two problems with Defendant National Union's reliance on *Germain* in the instant case.

First, the party seeking the jury trial in *Germain* had not filed a proof of claim in the underlying bankruptcy case. As is noted above, *Germain* dealt with a demand for jury trial made by the bankruptcy trustee, not a creditor-defendant. The opinion expressly notes at 988 F.2d p. 1330, ftn. 8 that a different standard on jury waiver should be applied to a trustee, "....the trustee should be accorded greater leeway in pursuing its interest than any individual creditor.....We do not agree, therefore, that each time a creditor is deemed to have waived the right to a jury trial, the same presumption must hold for the trustee." The same was true in

*Crown Vantage.* It was not the creditor-claimant which was seeking a jury trial; it was the bankruptcy estate representative. This is a critical distinction.

Second, National Union's two proofs of claim and Plaintiff's "bad faith" adversary proceeding arise out of the same transaction – National Union's D&O policy. The resolution of this dispute is therefore integral to "...the bankruptcy process of allowance and disallowance of claims..." rather than having a "negligible impact" on this issue, to use *Crown Vantage's* terminology, *id* 2002 U.S. Dist. LEXIS 26109, *12. This keeps the adversary proceeding "in equity".

The Ninth Circuit employs a broad, "logical relationship test" in determining the *equitable* jurisdiction of the bankruptcy court to resolve adversary proceedings over entities filing proofs of claim against the estate:

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. *In re Pinkstaff* 974 F.2d 113, 115 (9th Cir. 1992).

Expanding further on this test, the Ninth Circuit held in *In re Lazar* 237 F.3d 967, 980 (9th Cir. 2001) *cert. denied* 534 U.S. 922 (2001), "...The pertinent inquiry is whether the claims **arise out of** (emphasis added) the same transaction or occurrence and not whether the claims **are from** (emphasis added) the same transaction or occurrence," citing *In re Price* 42 F.3d 1068, 1073 (7th Cir. 1994).

Turning to instant case, it is abundantly clear that the Proofs of Claim filed by National Union in instant case **arise out of** the insurance policy which is the subject of Plaintiff's "bad faith" complaint. The Proof of Claim No. 40, (Pl. Req.Jud. Notice, Ex. 1), states in relevant part:

> 2. As of March 7, 2007 (the "Petition Date"), the Debtors are indebted to Claimant for premiums, deductibles, and other

> related fees, expenses and obligations for, among other things, insurance coverages and services provided by Claimant to the Debtors as more fully described below.
>
> 3. **The Insurance Program.** Claimant provided the Debtors with certain insurance coverages, including, without limitation, director's and officer's liability and other services (the "Insurance Program") for varying periods commencing March 3, 2006 and ending March 3, 2008. Claim is made for all obligations of the Debtors arising under the Insurance Program....[the attachment to the proof of claim identifies by number the same D&O policy which is attached as Exhibit 1 to the "bad faith" complaint]
>
> 5. **Components of this Claim.** ......
>    (d) **Quantum Meruit**  To the extent any Debtor received a benefit from insurance or bonds provided by Claimant, such Debtor is obligated to pay Claimant for the value of the benefits received.
>    (e) **Joint Liability.** Should it be established in these bankruptcy cases or otherwise, that any of the Debtors have liability for the obligations of any of the other Debtors then this claim asserts the same claim as Claimant asserted against each such Debtor against such other Debtor.
>    (f) **Other.** In connection with the foregoing, the Debtors also may be liable to Claimant by virtue of relevant principles of contract and common law relating to, among other things, subrogation, suretyship, indemnification, or contribution.

Notably, the portion of National Union's unliquidated proof of claim for "...indemnification, or contribution" can *only* arise in the event that a third party claim is successfully asserted against one of the insureds under the D&O policy, bringing National Union's coverage obligations squarely within the subject of this proof of claim.  This is in stark contrast to the situation in *Crown Vantage* where the proofs of claim in question arose out of undisputed promissory notes, but the adversary proceeding asserted business tort claims arising out of separate transactions.  For that reason the adversary proceeding in that case did indeed have a negligible impact on the allowance of the claims, and there was no "logical relationship" between the proofs of claim and the subject adversary proceeding.

Under the reasoning of *Langenkamp, Germain* and *Crown Vantage,* Wirum's adversary proceeding is  not triable by jury.

### C. This is Still An Action in Equity Even Though Plaintiff Holds Her "Bad Faith" Cause of Action as an Assignee

Defendant National Union argues that the "bad faith" complaint is unrelated to its proofs of claim, because Plaintiff Wirum is only an assignee of the policy rights of the Insured-defendant-directors, not a person in direct privity of contract with National Union, see National Union Ps & As., p. 13:13- p.14:5. There are two problems with this argument. First, it is directly contradicted by the allegations contained in National Union's answer to the bad faith complaint, NU Req.Jud.Not., Ex. 10. The answer states at p. 6, lines 4-7:

> ....Defendant National Union alleges that the implied covenant of good faith and fair dealing applies to all parties to an insurance contract, including parties stepping into the shoes of an insured by reason of an assignment, such that **Wirum owes a duty of good faith and fair dealing to National Union....**

And further at p. 9, lines 6- 10:

> ...**Plaintiff's, her attorney's, and agent's...unreasonable and bad faith conduct is in breach of the terms and conditions of the insurance contract**; that Plaintiff's her attorney's and agent's...unreasonable and bad faith conduct is a breach of **Plaintiff's obligations to Defendant National Union** under the implied covenant of good faith and fair dealing; (Emphasis added).

So Defendant is alleging in its answer that Plaintiff Wirum **directly** owes it express and implied contractual duties under the same "Insurance Program" that is the subject of its Proof of Claim No. 40, Pl. Req.Jud.Not., Ex. 1. That is obviously an integral factual connection between the claim and the bad faith complaint.

Second, National Union's assignment analysis was rejected by the Second Circuit in *In re CBI Holding Company, Inc.* 529 F.3d 432 (2d Cir. 2008). In that case a Chapter 11 liquidating agent was assigned certain tort claims held by the Chapter 11 debtor's creditors against the debtor's auditors, and brought an action for accountancy malpractice in the bankruptcy court. The auditors had filed a proof of claim for unpaid fees in the bankruptcy case. Following the analysis in *Germain* the Second Circuit held that the action was a "core"

proceeding and that the auditors had no right to a jury trial. The Court rejected the auditor's argument that this resulted in improper "jurisdiction by assignment", reasoning that was no evidence that the assignment was made for the purpose of manufacturing jurisdiction, and the litigation was prosecuted by the liquidating agent pursuant to the terms of the confirmed plan, *id* at 529 F.3d p. 465. That is exactly the situation in the instant case.

### D. National Union's *Two* Proofs of Claim Are Logically Related to the Bad Faith Complaint, Since They Encompass Alleged Rights Under the Same Insurance Contract over the Same Period of Time

National Union next argues that the "bad faith" complaint cannot be "logically related" to its Proof of Claim No. 40, since that claim was filed over a year before the "bad faith' action, and asserts unliquidated damages only up through March 7, 2007, NU Ps & As pp. 14:13- 15:5. This argument assumes, without any supporting authority, that the proof of claim/adversary proceeding must meet the standard of compulsory counterclaims to have a "logical relationship". No case or statute so holds.

More importantly, the argument ignores the *second* claim filed by National Union in the Chapter 11 case, which was omitted from National Union's moving papers, compare NU Req.Jud.Not. Ex. 1 with Pl. Req.Jud.Not. Exs. 1 & 2. The *second* claim seeks unliquidated damages for all periods *after* March 7, 2007 for the same purported obligations asserted in the first claim for the period prior to March 7, 2007. This, even if the first claim is not "logically related" to the bad faith complaint, the second claim certainly is.

### 3. THIS ADVERSARY PROCEEDING IS A "CORE PROCEEDING"

28 U.S.C. Section 157(b)(2)(C) lists as one type of "core" bankruptcy proceeding:

> (C) Counterclaims by the estate against persons filing claims against the estate;

These are matters on which a bankruptcy judge may enter final judgments, Section

157(b)(1). The same analysis that compels the conclusion that National Union has no jury trial right compels the conclusion that this action is a "core" proceeding, see *In re CBI Holding Company, Inc, supra.*

### 4. THE DECEMBER 7 TRIAL SHOULD NOT BE STAYED

Federal Rules of Bankruptcy Procedure, Rule 5011(c) states in relevant part:

> **(c) Effect of filing of motion for withdrawal or abstention**
> The filing of a motion for withdrawal of a case or proceeding...shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion...A motion for stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

There are *bona fide* emergencies, and there are manufactured "emergencies". This Motion to Withdraw Reference is one of the latter. Defendant National Union was served with Plaintiff's complaint on July 21, 2008. On June 22, 2009, a Scheduling Conference was held and the action was set for trial on December 7. Yet in mid-November, 2009, National Union declares an "emergency" and seeks to adjudicate its purported right to a District Court jury trial on shortened time. If National Union truly desired a District Court jury trial of this action, it should have sought that relief long ago.

Given this dilatory conduct, it is wholly inappropriate to disrupt the Bankruptcy Court's calendar and prejudice the Plaintiff – whose witnesses are lined up and ready to go – by delaying the pending trial.

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Defendant waived any right to jury trial it may have had by filing proofs of claim in the underlying Chapter 11 case. This adversary proceeding should stay in the bankruptcy court and go to trial on December 7.

Dated: December 2, 2009			Respectfully submitted,

MacConaghy & Barnier, PLC

/s/ John H. MacConaghy
By John H. MacConaghy
*Attorneys for Plaintiff, Andrea A. Wirum Liquidating Trustee*